**Lee B. Balefsky**, admitted *pro hac vice*
Email: lee.balefsky@klinespecter.com
**Christopher A. Gomez**, admitted *pro hac vice*
Email: chris.gomez@klinespecter.com
**KLINE & SPECTER, P.C.**
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-0960
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SUE LONG and LEE LONG,<br><br>Plaintiffs,<br><br>v.<br><br>ETHICON, INC. and JOHNSON & JOHNSON,<br><br>Defendants. | Civil No.: 3:20-cv-00381-AC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

\\\\

\\\\

\\\\

\\\\

\\\\

\\\\

\\\\

\\\\

\\\\

**I.** **TABLE OF CONTENTS**

I. TABLE OF CONTENTS ........................................................................................... ii

II. TABLE OF AUTHORITIES .................................................................................... iii

III. LR 7-1 CERTIFICATION & SUMMARY OF ARGUMENTS ............................ 1

IV. RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS ... 2

V. LEGAL STANDARD ............................................................................................. 5

VI. LEGAL ARGUMENT ............................................................................................ 6

A. Plaintiffs' claims are not barred by the statute of limitations because Ms. Long filed her complaint within two years of discovering her injuries were caused by the defective TVT device. .................................................................................. 6

B. Plaintiffs' design defect claims survive because Plaintiffs' general causation expert, Dr. Bruce Rosenzweig, describes in sufficient detail (1) why the TVT was defectively designed and (2) that safer alternative designs existed which would have reduced or eliminated Plaintiffs' injuries. ......................................................... 9

C. Plaintiffs have demonstrated that Defendants failed to warn implanting physicians, like Dr. Peterson, of the serious risks attributed to the TVT device which proximately caused Ms. Long's injuries. ..................................................... 11

D. Mr. Long's loss of consortium claim must also survive because Ms. Long's claims are viable causes of actions under Oregon law. ........................................ 14

VII. CONCLUSION ..................................................................................................... 14

## II.  TABLE OF AUTHORITIES

**Cases**

*Anderson v. Bayer Healthcare Pharm., Inc.*, CV1405607SDWSCM, 2015 WL 12745062 (DNJ Sept 9, 2015) ........................................................................................................................ 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ................................................................ 6

*Benjamin v. Wal–Mart Stores, Inc.,* 185 Or.App. 444 (2002), *rev. denied,* 335 Or. 479, 72 P.3d 76 (2003) ....................................................................................................................................... 15

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) .......................... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................. 5

*Cole v. Sunnyside Marketplace, LLC*, 212 Or App 509, 519 (2007), *rev den*, 344 Or 558 (2008). ............................................................................................................................................... 8, 10

*Easter v. Am. W. Fin.,* 381 F.3d 948 (9th Cir.2004) ...................................................................... 6

*Heaton v. Ford Motor Co.*, 248 Or. 467, 470 (1967) .................................................................. 11

*Kildow v. Breg, Inc.*, 796 F. Supp. 2d 1295 (D. Or. 2011) ................................................... 7, 8, 10

*Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014) ...................................................................... 6

*McCarthen v. Toyota Motor Corp.*, 23 P.3d 320 (Or. 2001) ................................................ 10, 11

*McEwen v. Ortho Pharm. Corp.*, 270 Or 375 (1974) ................................................................. 13

*Miles v. Bollinger*, 979 F.2d 848 (4th Cir. 1992) (Table), 1992 WL 347635 (4th Cir. Nov. 25, 1992) .............................................................................................................................................. 5

*Sluimer v. Verity, Inc.*, 606 F.3d 584 (9th Cir.2010) ..................................................................... 6

*T.R. v. Boy Scouts of Am.,* 344 Or. 282 (2008) ............................................................................. 7

*Workman v. Rajneesh Found. Int'l*, 84 Or App 226 (1987), *rev den*, 303 Or 700 (1987). ............. 8

**Statutes**

Or. Rev. Stat. § 30.905(1) ................................................................................................... 6

Or. Rev. Stat. § 30.920 ....................................................................................................... 9

**Other Authorities**

*Restatement (Second)*, § 402A ................................................................................... 10, 14

**Rules**

Fed. R. Civ. P. 56(c) .......................................................................................................... 5

### III.    LR 7-1 CERTIFICATION & SUMMARY OF ARGUMENTS

In Compliance with Local Rule 7-1(a), counsel for Plaintiffs hereby certify that they have conferred in good faith with counsel for Defendants in an effort to resolve discussed herein, but the parties have been unable to reach a resolution.

Pursuant to this Court's March 19, 2020, Order, Plaintiffs, Susan and Lee Long, by and through their undersigned counsel, respectfully submit the foregoing Response in Opposition to Defendants, Ethicon, Inc. and Johnson & Johnson's, ("Defendants") Motion for Summary Judgment. As a threshold matter, Plaintiffs oppose Defendants' motion on any argument not permitted by this Court's March 19th Order, which limits arguments to those concerning the statute of limitations. The Order reads, in part: "Defendant may refile their motion for summary judgment with argument regarding the statute of limitation issue in this Court by 4/18/2020." (Doc. 48). In spite of this Court's clear and concise directions, Defendants chose to file a full motion for summary judgment on all of Plaintiffs' claims, even while limited fact discovery remains open. In this Response, Plaintiffs address all of Defendants' arguments contained in their Motion, however, Plaintiffs ask that this Court strike those portions of Defendants' Motion that do not pertain to the statute of limitations.

In their present motion, Defendants move for summary judgment on the following grounds, which Plaintiffs oppose:

- Count I (Negligence);
- Count III (Strict Liability Failure to Warn);
- Count V (Strict Liability Design Defect);
- Count XVII (Loss of Consortium).

For the reasons set forth below, Defendants' motion should be denied in full because (1) a genuine issue of material fact exists on statute of limitations—Ms. Long did not discover that Defendants' were the cause of her injury until late summer 2013; (2) this Court did not permit

**Page 1 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendants to file for summary judgment on any other basis beyond statute of limitation; and (3), in the alternative, genuine issues of material fact exist as to every other count which Plaintiffs oppose.

## IV.  RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1.  Plaintiffs do not object to Defendants' Fact No. 1.

2.  Plaintiffs object to Defendants' Fact No. 2 on the basis that it is immaterial. Whether Dr. Peterson likes the TVT, or thinks it is well made, is irrelevant. Dr. Peterson has not been designated as an expert in this case, nor has he been qualified as an expert as to the properties of the TVT or polypropylene to render opinions about the device. The Declaration of Lee B. Balefsky in Opposition to Defendants' Motion for Summary Judgment ("Balefsky Dec."), **Ex. 1**.

3.  Plaintiffs object to Defendants' Fact No. 3 on the basis that it misstates Dr. Peterson's testimony. While the testimony speaks for itself, Dr. Peterson also testified that he could not communicate risks to the patient that he was not aware of (Balefsky Dec. **Ex. 2** at 76:6-12), and that he did not warn of the risk of chronic painful intercourse—a complication that Ms. Long currently experiences as a result of the TVT implant. *Id*. 42:15-43:1; 44:1-4, 16-23; Balefsky Dec. **Ex. 3** at 22:15-16; 119:18-22.

4.  Plaintiffs object to Defendants' Fact No. 4 on the basis that it misstates the facts. "[U]nderstanding the risks of TVT *procedure* and *pelvic surgery*", in general, disregards the additional, and often chronic, risks of the TVT device itself. To this end, Dr. Peterson explained that Ethicon was a source of information, while not the only source, he used to learn of the risks of the TVT. Balefsky Dec. **Ex. 2** at 54:17-25.

5.  Plaintiffs object to Defendants' Fact No. 5 on the basis that it is not relevant. At issue is not what the IFU says, but what the IFU <u>does not say</u>. *Chronic* irritation and infection,

**Page 2 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

*chronic* foreign body reaction, chronic dyspareunia, *chronic* inflammation, and the permanency, frequency, or severity of these risks, including temporary or permanent lower urinary tract obstruction are TVT complications Defendants knew about yet were not included in the IFU. Balefsky Dec. **Ex. 4** – ETH.MESH.02340529 (select pages).

      6.      Plaintiffs do not object to Defendants' Fact No. 6.

      7.      Plaintiffs do not object to Defendants' Fact No. 7.

      8.      Plaintiffs do not object to Defendants' Fact No. 8.

      9.      Plaintiffs do not object to Defendants' Fact No. 9, to the extent Ms. Long has not since treated with Dr. Peterson.

      10.      Plaintiffs do not object to Defendants' Fact No. 10. Ms. Long's medical records speaks for itself.

      11.      Plaintiffs do not object to Defendants' Fact No. 11. Ms. Long's medical records and deposition testimony speak for themselves.

      12.      Plaintiffs do not object to Defendants' Fact No. 12.

      13.      Plaintiffs do not object to Defendants' Fact No. 13. Ms. Long's medical records speak for itself.

      14.      Plaintiffs do not object to Defendants' Fact No. 14. Ms. Long's medical records speak for itself.

      15.      Plaintiffs do not object to Defendants' Fact No. 15. To provide further response, Plaintiffs also designated Dr. Bruce Rosenzweig as their general causation expert.

      16.      Plaintiffs do not object to Defendants' Fact No. 16.

## NEW MATTER

17. None of Ms. Long's treating physicians (including Dr. Peterson and Dr. Edwards) described the TVT as defective; therefore, she herself could not know the TVT was in a defective condition. Balefsky Dec. **Ex. 5**, Request for Admissions ¶ 3.

18. Ms. Long testified that she suspected Defendants played a role in her injuries in late-Summer 2013, when she saw a television commercial advising that her mesh might be defective. Balefsky Dec. **Ex. 3**, 23:20-24:1.

19. It was at that moment in 2013 that Ms. Long became reasonably aware that the TVT's defective state could be the cause of her injuries—she immediately Googled the advertisement, filled out an online questionnaire, and was contacted by law firm. *Id*. at 25:22-25; 27:8-15.

20. Plaintiffs' general causation expert, Dr. Bruce Rosenzweig describes in detail the defective characteristics of the TVT device that make it unsafe for implantation in women's bodies. *See generally* Balefsky Dec. **Ex. 6**, Dr. Rosenzweig's Rule 26 Expert Report.

21. As early as the late 1990's, Ethicon knew that lighter weight, larger pore mesh designs had lesser complication rates than the small-pore, heavyweight mesh of the TVT. *Id*. at 13.

22. Studies demonstrate that mesh designs incorporating lighter weight, larger-pore mesh are safer than the mesh used in the TVT. Balefsky Dec. **Ex. 7**.

23. Ethicon's global medical director, Dr. Piet Hinoul testified that Ethicon was aware of adverse events, including adverse events that Ms. Long experienced, that were not included in the TVT's IFU. Balefsky Dec. **Ex. 6** at 59.

24.     Dr. Peterson, Ms. Long's implanting physician, testified that he read the IFU. Balefsky Dec. **Ex. 2** at 54:17-25. And, while not his sole source of information, he relies on device manufacturers to provide adequate warnings as to their products. *Id.* at 65:10-13. Dr. Peterson acknowledged that if there is information he is not aware of, then he cannot pass that information on to his patients. *Id*. at 76:6-12.

V.      **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (quoting Rule 56(c), as written at that time). "This burden can be met either by presenting affirmative evidence or by demonstrating that the nonmovant's evidence is insufficient to establish his claim." *Miles v. Bollinger*, 979 F.2d 848 (4th Cir. 1992) (Table), 1992 WL 347635, at *2 (4th Cir. Nov. 25, 1992) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

When the moving party meets its initial burden, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Rule 56(e), as written at that time).

**Page 5 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

When reviewing a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the court must "draw all reasonable inferences in favor of the nonmoving party." Moreover, the court "is required to resolve all conflicts in favor of the non-moving party." *Latif v. Holder*, 28 F. Supp. 3d 1134, 1147 (D. Or. 2014) (citing *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir.2010)). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.,* 381 F.3d 948, 957 (9th Cir.2004) (citation omitted).

## VI. LEGAL ARGUMENT

**A.  Plaintiffs' claims are not barred by the statute of limitations because Ms. Long filed her complaint within two years of discovering her injuries were caused by the defective TVT device.**

Plaintiffs timely filed their complaint, within the applicable two-year statute of limitations, on January 26, 2015. Generally, the limitations period begins to run from the time the cause of action accrues. Here, the discovery rule tolled the running of the statute of limitations until mid-Summer 2013, when Ms. Long saw a television commercial that described transvaginal mesh products as defective. This was the first time Ms. Long was informed that a defect in the TVT was the cause of her injuries.

Defendants argue that the statute of limitations began to run after Ms. Long's revision procedure on April 23, 2010. (Doc. 50 at 9). This is an incorrect application of Oregon's discovery rule.

Or. Rev. Stat. § 30.905(1) codified the discovery rule and states that product liability actions in Oregon "must be commenced not later than two years after the plaintiff discovers, or reasonably should have discovered" a causal relationship between the injury alleged and either the product or the conduct of the defendant. Or. Rev. Stat. § 30.905(1). Case law further clarifies this

rule. "[T]he discovery accrual rule provides that a plaintiff's claim against a particular defendant accrues when (1) the plaintiff knows, or a reasonable person should know, that there is enough chance that the defendant had a role in causing the plaintiff's injury to require further investigation; and (2) an investigation would have revealed the defendant's role." *Kildow v. Breg, Inc.*, 796 F. Supp. 2d 1295, 1298 (D. Or. 2011)(citing *T.R. v. Boy Scouts of Am.,* 344 Or. 282, 296, 181 P.3d 758 (2008)).

In *Kidlow v. Breg*, the plaintiff brought action against the manufacturer and distributor of a medical "pain pump" device, asserting claims for negligence and products liability. Defendant moved for summary judgment arguing, in part, that plaintiff's claims are time-barred, because she reasonably could have discovered the causal relationship between her injury and Defendants' pain pump more than two years prior to the filing of her lawsuit. *Kidlow* at 1298. However, defendants cited to no evidence showing that the plaintiff was advised that her injuries were caused by the defective pain pump. *Id*. Nor did the *Kidlow* defendants cite to any evidence "that [plaintiff] had reason to know that a ***defective product***, as opposed to some other factor, was the cause of her shoulder pain." *Id*. (emphasis added). The facts in *Kidlow* are analogous to this matter.

he threshold question should be whether the wrong and its probable consequences, by their nature, are *inherently discoverable* upon the occurrence. *Workman v. Rajneesh Found. Int'l*, 84 Or App 226, 230, 733 P2d 908, 911 (1987), *rev den*, 303 Or 700 (1987). Oregon law dictates that under the discovery rule, the statute of limitations begins to run only when:

> [T]he plaintiff knows or, in the exercise of reasonable care should know, facts that would make an objectively reasonable person aware of a substantial possibility that all three of the following elements exist: an injury occurred, the injury harmed one or more of the plaintiff's legally protected interests, and the defendant is the responsible party.

*Cole v. Sunnyside Marketplace, LLC*, 212 Or App 509, 519, 160 P3d 1, 6 (2007), *rev den*, 344 Or 558 (2008).

**Page 7 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Here, Ms. Long underwent a vaginal hysterectomy, bilateral salpingo-oophorectomy, combined vaginal anterior and posterior colphorraphy to treat multiple prolapses, and the TVT implantation. *See* Defendants' Exhibit 7, LONGS_PSR_00024-00025. There exists no doubt that Ms. Long experienced injuries, and those injuries harmed her legally protected interests.

The facts here are clear, Ms. Long was unable to determine that Defendants were the responsible parties for her injuries until Summer 2013, after she saw a television commercial advising her that her mesh might be defective. At no previous point during her treatment with Dr. Peterson, Dr. Edwards, or any other treating physician, was Ms. Long able to determine that Defendants' defective TVT device was the cause of her injuries. Not one of Ms. Long's treating physicians ever told her the TVT device was defective, even after receiving a second opinion from Dr. Edwards. Balefsky Dec. **Ex. 5**, ¶ 3. Ms. Long testified in her deposition that only after she saw the television commercial in 2013 did she begin to suspect that the TVT device could be part of her problems:

> Q. When is the first time that you saw such a commercial?
> A. I believe late summer of 2013.
>
> Q. Okay. What do you remember about the commercial that you saw?
> A. When I read about it, I thought, could this be part of what's -- what my problem is.

Balefsky Dec. **Ex. 3** at 23:20-24:1.

Ms. Long further testified that she immediately Googled the advertisement, filled out the online questionnaire, and was contacted shortly thereafter by a law firm. *Id.* at 25:22-25; 27:8-15. Based on Ms. Long's testimony, the discovery rule, and long-standing Oregon law, the statute of limitations in this case began to run late summer 2013 when Plaintiff discovered that the TVT device could be the cause of her injuries.

**Page 8 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendants would have this Court believe the Ms. Long's statute of limitation began to run when she sought treatment for the complications she began experiencing following her mesh implant. However, seeking treatment for relief of symptoms does not trigger a duty to inquire about facts that might trigger a statute of limitations. *Kidlow*, 796 F Supp 2d 1295, 1299 (citing *Cole*, 212 Or.App. 509, 521). More precisely, "whether a plaintiff is subject to a duty to inquire about facts that may trigger a statute of limitation, **is itself a question of fact**." *Id*. (emphasis added). Knowledge of an injury alone is not sufficient to trigger an inquiry into whether the injury was caused by the conduct of another. Ms. Long neither knew, nor could have known, that the TVT's defective characteristics were causing her symptoms, regardless of whether she sought medical treatment. Whether Ms. Long had sufficient knowledge to warrant further investigation is a factual determination to be resolved by the trier of fact. *Id*. Therefore, Defendants' motion must be denied.

**B.    Plaintiffs' design defect claims survive because Plaintiffs' general causation expert, Dr. Bruce Rosenzweig, describes in sufficient detail (1) why the TVT was defectively designed and (2) that safer alternative designs existed which would have reduced or eliminated Plaintiffs' injuries.**

Plaintiffs design defect claims are cognizable under Oregon law. To proceed with a defective design claim in Oregon, a plaintiff must provide evidence that a specific defect in the product's design and how such defect caused plaintiff's injuries. *See McCarthen v. Toyota Motor Corp.*, 23 P.3d 320, 332 (Or. 2001), *cited in Anderson v. Bayer Healthcare Pharm., Inc.*, CV1405607SDWSCM, 2015 WL 12745062, at *3 (DNJ Sept 9, 2015) (applying Oregon law in a case involving an insertable intrauterine device which penetrated plaintiff's uterus.) In Oregon, the consumer expectations test is the only theory of liability that the law expressly mandates. *See* Or. Rev. Stat. § 30.920. Under Section (1), the test requires a plaintiff to prove that the product at issue is both defective and unreasonably dangerous. *McCathern*, 332 Or

**Page 9 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

59, 77; *see also Restatement (Second)*, § 402A, comment I (liability under 402A attaches only when defective condition of the product makes it unreasonably dangerous to user or consumer).

Whether a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer is a question of fact to be resolved by the jury. *Id*. (*citing Heaton v. Ford Motor Co.*, 248 Or. 467, 470, 435 P.2d 806 (1967) (*adopting* Section 402A). In cases where a jury is unequipped by general knowledge or facts, the court recognized that additional evidence *may be required*—evidence that "the magnitude of the product's risk outweighs its utility, which often is demonstrated by proving that a safer design alternative was both practicable and feasible." *Id*. at 78 (emphasis added). Based on the court's language, a safer alternative design is not always required, though it is helpful to the trier of fact.

In this case, Plaintiffs have sufficient evidence that the TVT's risks vastly outweighed its benefits, and a safer alternative design would have reduced or eliminated Plaintiffs' injuries. In his general causation expert report, Plaintiffs' expert Dr. Bruce Rosenzweig details at length the characteristics of the TVT device that make it unreasonably dangerous for implantation in the human body. Characteristics such as degradation of the mesh over time, deformation of the mesh, loss of pore size with tension, and the combination of small pore size and the heavy weight of the mesh leads to increased complication rates in patients. *See* Balefsky Dec. **Ex. 6** at 12.

As early as the late 1990's, Ethicon determined that lighter weight, larger pore meshes were safer than small pore, heavier weight meshes (like the mesh in the TVT). *Id*. at 13 (*citing* ETH.MESH.07455220 (discussing mesh shrinkage/contracture and stating: "Since this phenomenon occurs most frequently in small pore, heavy weight mesh, ETHICON has developed larger pore, light weight meshes…)). This design improvement was never incorporated into the

**Page 10 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

TVT. *Id*. Internally, many Ethicon doctors agreed that small pore, heavy weight meshes were causing higher complications rates. *Id.* at 23.

The safer alternative is the larger-pore, lighter-weight mesh design used in devices such as Ultrapro. Larger pore, lighter weight mesh is a safer alternative for permanent implantation in women owing to its lesser rates of complication. *See* Balefsky Dec. **Ex. 7**. Ethicon *knew* this mesh design was safer, yet it chose not to incorporate the design—Dr. Brigette Hellhammer testified that despite having incorporated the use of lightweight, large pore Ultrapro mesh in other products, this design was never incorporated in the TVT because the company wanted to continue to rely on certain studies performed by the TVT's inventor. Balefsky Dec. **Ex. 6** at 52 (*citing* Deposition of Brigette Hellhammer, MD, September 11, 2013).

The dangers posed by the TVT were beyond that which could be contemplated by Ms. Long or a reasonable consumer. For the reasons stated above, Defendants' motion should be denied.

> **C.  Plaintiffs have demonstrated that Defendants failed to warn implanting physicians, like Dr. Peterson, of the serious risks attributed to the TVT device which proximately caused Ms. Long's injuries.**

Defendants failed to warn Ms. Long's implanting physician, Dr. Peterson, of serious risks and complications associated with the TVT device which proximately caused her injuries. While the duty of the manufacturer is to warn the doctor, rather than the patient, the manufacturer is directly liable to the patient for a breach of such duty. *McEwen v. Ortho Pharm. Corp.*, 270 Or 375, 387 (1974). Defendants here had a duty to make timely and adequate warnings to the medical profession of any dangerous complications caused by the TVT of which it knew or had had reason to know. *Id*. at 387. Plaintiffs' general causation expert, Dr. Bruce Rosenzweig, states the following in his expert report:

**Page 11 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

> Ethicon's warnings and disclosures of adverse events in its TVT Instructions for Use ("IFU") have been inadequate based on the adverse reactions and risks associated with the TVT that have been known to Ethicon from the time the TVT was first sold and marketed.

Balefsky Dec. **Ex. 6** at 3. Dr. Rosenzweig cites to studies in his report conducted between 2006-2010 where the authors found that 30% of the mesh-implantation patients experienced dyspareunia. Despite possessing this information, Defendants failed to mention this damaging statistic in the TVT Instructions for Use ("IFU"). Additionally, 43% of patients experienced erosions, and 35% experienced pelvic pain. *Id*. at 103. In the IFU, many of the adverse reactions, risks, and characteristics of the mesh are inaccurate and inappropriately downplayed. *Id*. at 65. For example:

> *Transitory* local irritation at the wound site and a *transitory* foreign body response may occur. The response would result in extrusion, erosion, fistula formation and inflammation (emphasis added).

*Id*. This language significantly downplays the permanent nature of the risks as the word "transitory" suggests a temporary risk associated with the surgery itself, instead of the more chronic risks associated with the device. Ethicon Medical Director, Dr. Piet Hinoul, testified that Ethicon was aware of adverse events (such as chronic painful intercourse, urinary tract infections, de novo urgency, contracture of the mesh causing pain, and worsening incontinence—all of which Ms. Long experienced) that were not included in the IFU. *Id*. at 59 (*citing* Piet Hinoul Deposition dated July 27, 2013). Ethicon Medical Director, Dr. Martin Weisberg, testified that Ethicon did not include: "permanent, lifelong, worsening and debilitating pain", lifelong risk of surgical repairs, "severe or chronic inflammation", degradation, or particle loss in the IFU – all complications that Ethicon was aware of at the time of Ms. Long's implantation. *Id*. at 60 (citing Weisberg Deposition dated August 9, 2013).

**Page 12 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

In his deposition, Ms. Long's implanting physician testified that he read the IFU. Balefsky Dec. **Ex. 2** at 54:17-25. Dr. Peterson also testified that he relies on device manufacturers to provide adequate warnings as to their products. *Id.* 65:10-13. Further, Dr. Peterson stated that if Ethicon had made him aware of additional risks associated with the TVT, he would share those risks with his patients. *Id.* 71:1-9. Dr. Peterson acknowledged that if there are risks that he's not aware of, then he cannot provide that information to his patients:

> Q.  Okay… So [in the] discussion of the risks and benefits, if there's a risk or benefit that you're not aware of, then you can't provide those to the patient, correct?
> A.  Well, I think that's like asking me if I quit beating my wife. We can't tell [patients] about something that we don't know about.

*Id.* 76:6-12.

In her deposition, Ms. Long testified that she was not fully informed of the risks involved with the TVT implant. Balefsky Dec. **Ex. 3** at 22:15-16. Ms. Long testified that Dr. Peterson did not discuss the risk of painful intercourse with her, and she considered that to be a significant risk. *Id*. at 119:18-22. If the risk of painful intercourse were discussed with her, Ms. Long testified that she would have said "Whoa. I'm going to wait a bit and figure this out a little bit more." *Id.* 119:3-5.

The crux of Defendants' failure to warn argument is that "there is no duty to warn of risks already known by the foreseeable user of the product." (Doc. 50 at 18). Defendants focus their brief almost entirely on risks associated with pelvic floor surgery, generally (note Defendants' repeated use of the word 'transitory' in their brief), but fail to account for the long-term risks and chronic complications it knew could result from the TVT device itself. Where a manufacturer has reason to anticipate that danger may result from a particular use, the manufacturer may be required to give adequate warning of the danger, and a product sold without such warning is in a defective

**Page 13 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

condition. *Benjamin v. Wal–Mart Stores, Inc.,* 185 Or.App. 444, 453, 61 P.3d 257 (2002), *rev. denied,* 335 Or. 479, 72 P.3d 76 (2003) (quoting § 402A, comment h).

Here, Ethicon's duty was to include the risks and complications it knew were associated with the TVT—it failed to do so. Plaintiffs have ample testimony from company representatives via Dr. Rosenzweig's report that Defendants downplayed and omitted chronic risks and complications. As Dr. Peterson testified, he is unable to communicate risks to patients that Ethicon does not communicate to him. Balefsky Dec. **Ex. 2** at 76:6-12. Therefore, Defendants failed to properly warn Dr. Peterson, which renders the TVT in a defective condition. Defendants motion should be denied.

**D.   Mr. Long's loss of consortium claim must also survive because Ms. Long's claims are viable causes of actions under Oregon law.**

For the reasons stated above, Ms. Long's claims are real and cognizable under Oregon law. Therefore, Mr. Long's loss of consortium claims must also survive.

**VII.   CONCLUSION**

Defendants' Motion for Summary Judgment should be denied in full.

Respectfully submitted,
KLINE & SPECTER, P.C.

Dated: May 8, 2020          BY:  /s/ Lee B. Balefsky
LEE B. BALEFSKY
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Attorney for Plaintiffs

**Page 14 – RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**ATTORNEY CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in the United States District Court for the District of Oregon.

DATED this 8th day of May 2020.

_____
LEE B. BALEFSKY (admitted *pro hac vice*)

*Attorney for Plaintiffs*